**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In re:  **RENEE DENISE CRENSHAW,** | Case No.: 17-35091-KRH |
| | Chapter 7 |
| **Debtor.** | |

**TRUSTEE'S MOTION FOR ORDER AUTHORIZING THE SALE**
**OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 363**

**COMES NOW** the Chapter 7 Trustee, Roy M. Terry, Jr. (the "**Trustee**"), and files this motion pursuant to Bankruptcy Code § 363, and Federal Rule of Bankruptcy Procedures 2002, 6004 and 9014, for entry of an order authorizing the Trustee to sell the bankruptcy estate's interest in certain real property free and clear of all liens, claims, encumbrances, and interests (the "**Motion**").  In support thereof, the Trustee respectfully states as follows:

**JURISDICTION**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(N).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

3. On October 11, 2017 (the "**Petition Date**"), Renee Denise Crenshaw (the "**Debtor**") commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

4. On October 12, 2017, Roy M. Terry, Jr. was appointed as the Chapter 7 Trustee in this case and he continues to serve in that capacity.

Roy M. Terry, Jr., VSB # 17764
SANDS ANDERSON PC
P.O. Box 2188
Richmond, VA 23219-2188
Telephone: 804.648.1636
  *Chapter 7 Trustee*

5.     The Debtor owns real property commonly known as 5012 Erringer Place, Philadelphia, PA 19144 (Parcel ID: 046N21-0069) and further described as follows:

> ALL THAT CERTAIN LOT OR PIECE OF GROUND, SITUATE IN THE 13TH (FORMERLY PART OF THE 22ND) WARD OF THE CITY OF PHILADELPHIA. BOUNDED AND DESCRIBED ACCORDING TO A SURVEY AND PLAN THEREOF MADE BY H. M. FULLER, ESQUIRE, SURVEYOR AND REGULATOR OF THE 9TH DISTRICT ON MARCH 14, 1924, AS FOLLOWS: BEGINNING AT A POINT ON THE SOUTHWEST SIDE OF ERRINGER PLACE 109 FEET 10-5/8 INCHES NORTHWEST OF CLAPIER STREET AND EXTENDING IN A NORTHWESTWARDLY DIRECTION 18 FEET 3-7/8 INCHES; THENCE IN A SOUTHWESTERLY DIRECTION 134 FEET 11 INCHES; THENCE IN A SOUTHEASTERLY DIRECTION 18 FEET 3-7/8 INCHES; THENCE IN A NORTHEASTERLY DIRECTION 134 FEET 4-7/8 INCHES TO THE PLACE OF BEGINNING INCLUDING ON THE REAR END THEREOF A CERTAIN 16 FEET WIDE DRIVEWAY LEADING SOUTHEASTWARD INTO THE SAID CLAPIER STREET

(the "**Property**").

6.     The Debtor scheduled the Property as having a value of $116,000.00 subject to a mortgage in favor of Mr. Cooper, d/b/a Nationstar Mortgage (the "**Secured Creditor**") in the amount owed on the Petition Date of approximately $107,642.00. Upon information and belief, the fair market value of the Property is significantly higher than the amount scheduled.

7.     Contemporaneously herewith, the Trustee has filed his Application to Employ Auction.com as Auctioneer and Sean Ryan as Listing Agent to assist with selling the Property.

## RELIEF REQUESTED

8.     The Trustee requests the entry of an order pursuant to § 363 of the Bankruptcy Code approving the sale of the Property by private auction (as defined below), using the services of Auction.com, free and clear of all liens, claims, encumbrances, and interests. Importantly, the Secured Creditor consents to the Property's sale and the creation of a carve-out fund (the "**Carve-Out Fund**") that will enable a distribution to unsecured creditors after the payment of administrative costs and expenses.

**BASIS FOR RELIEF**

**A.     The Auction and Sale of the Property Should Be Approved**

9.      The Trustee seeks the Court's authority to sell the Property free and clear of all liens, claims, encumbrances, and interests, pursuant to the Auction procedures described below.

10.     Pursuant to § 363(b) of the Bankruptcy Code, a trustee, after notice and hearing, may use, sell, or lease property of the Debtor's estate other than in the ordinary course of business. The Court should approve the sale if the Trustee can demonstrate a sound business justification for the sale and if the sale process is fair, open, and reasonable. *See Official Comm. Of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *see also In re Sarah's Tent, LLC*, 396 B.R. 571, 573 (Bankr. S.D. Fla. 2008). Further, Bankruptcy Rule 6004(f) contemplates sales outside of the ordinary course of business made by public auction.

11.     The Trustee, through the services of Auction.com ("**ADC**"), intends to offer the Property for sale (the "**Auction**") following a 21-day multi-channel marketing campaign with exposure on Auction.com, Trulia and Zillow. During the 21-day marketing period, Sean Ryan (the "**Listing Agent**") will also list the Property on the Multiple Listing Service and hold at least two open houses, to the extent possible. The Auction of the Property will commence after the 21-day marketing period per the advertised and applicable start and end dates/times. If the Property receives a bid that is sufficient to meet the reserve price, then the Property is sold to the winning bidder. If the reserve is not met by the end of the first Auction, then ADC will advertise a second Auction to commence one week later. If the reserve price is not met at the second auction, ADC will advertise and commence a third Auction one week later. In summary, unless the reserve price is met, ADC will run three consecutive Auctions in three consecutive weeks in

order to provide the Property with sufficient exposure to the marketplace. If the reserve price is not met at the third Auction, the Secured Creditor will then utilize its right to purchase the Property by credit bid. As part of this process, there will be auction procedures, described below, to maximize the value of the Property.

12. The Auction will facilitate a sale that is in the best interest of the creditors of the bankruptcy estate. As such, the Trustee, in the exercise of his business judgment, submits that the sale price resulting from the Auction will be fair and reasonable.

13. The Trustee and ADC will use the following procedures to conduct the Auction and sale of the Property.

- **Property to be Sold**: The Property that is offered at the Auction shall be sold pursuant to § 363 of the Bankruptcy Code free and clear of all liens, claims, encumbrances, and interests.

- **The Auction Date**: The first "Auction Date" shall not be set until entry of an order by the Bankruptcy Court approving the Motion to Sell. The first "Auction Date" shall be a date selected by ADC that is at least 21 days following the entry of an order by the Bankruptcy Court approving the retention of ADC; provided however that the Auction Date may be adjourned from time to time by posting a notice of adjournment on ADC's website.

- **Registration Process**: Each party wishing to participate in the Auction shall submit an on-line registration form on the website established by ADC for the Auction to qualify as a bidder. The registration form shall, among other things: (i) contain such information as reasonably requested by ADC to identify the potential bidder; and (ii) require a credit card authorization for payment of a deposit (in an amount to be determined by ADC in consultation with the Trustee), which deposit will either (a) <u>not</u> be charged, if the bidder is not the winning bidder, (b) <u>not</u> be charged, if the bidder is the winning bidder and timely consummates the sale pursuant to the Sale Documents, or (c) may <u>be</u> <u>charged</u>, if the bidder is the winning bidder but fails to timely consummate the sale, including fails to execute the Sale Documents promptly following completion of the Auction. The Secured Creditor shall be deemed to be a qualified bidder at the Auction and shall not be required to submit a registration form or deposit. ADC, in consultation with the Trustee, shall have the right to disqualify any

4

- **Bid Procedure**: Prior to the commencement of the first Auction Date, the Secured Creditor shall provide a written notice (the "**Secured Creditor Notice**") to the Trustee and ADC of the amount of its credit bid pursuant to § 363(k) of the Bankruptcy Code. The Secured Creditor Notice shall also include the following information: (i) a minimum purchase price for the sale of the Property acceptable to the Secured Creditor (the "**Reserve Price**"); (ii) the Secured Creditor's initial credit bid amount to serve as the opening bid for the Auction (the "**Opening Bid**"), which may be less than the Reserve Price; and (iii) the bidding increment(s) ("**Bidding Increments**") for each round of bidding after the Opening Bid.[1] The Bidding Increments may be adjusted upwards or downwards during the Auction for each bidding round in the discretion of ADC to facilitate the most competitive bidding. The Secured Creditor Notice shall be the sole authorization required by the Trustee and ADC to consider the submission of the Opening Bid and any competing bid(s) by the Secured Creditor pursuant to § 363(k) of the Bankruptcy Code.[2]

- **Winning Bid Amount**: The "Winning Bid Amount" shall be the highest or otherwise best bid selected by the Trustee and ADC, consistent with the Secured Creditor Notice, during the Auction.

- **Buyer's Premium**: In addition to the Winning Bid Amount, the winning bidder shall pay a "Buyer's Premium" equal to the greater of $2,500 or five (5%) of the Winning Bid Amount, which shall be paid at closing directly to ADC as its commission (the "**Buyer's Premium**"). ADC shall not be entitled to any other compensation. No Buyer's Premium shall be paid when the highest bid is the Secured Creditor's credit bid. ADC shall not split or otherwise share the Buyer's Premium with any other person or entity. The estate shall not be responsible or obligated to pay any compensation to ADC.

---

[1] If not otherwise set forth in the Secured Creditor Notice, the Reserve Price, the Opening Bid, and the initial Bidding Increments may be established by ADC in consultation with the Trustee and the Secured Creditor; provided, however that ADC may adjust Bidding Increments upwards or downwards during the Auction in its discretion.

[2] Without limiting the foregoing, ADC shall be authorized to increase Bidding Increments automatically during the Auction on behalf of the Secured Creditor to the extent of the authorization provided for in the Secured Creditor Notice.

5

- **Total Purchase Price**: The actual total purchase price ("**Total Purchase Price**") at closing will be equal to the Winning Bid Amount plus the Buyer's Premium.

- **Listing Agent's Commission**: The Listing Agent shall receive up to 3% of the Winning Bid Amount for any sale that closes to a third party buyer (the "**Commission**"). No Commission shall be paid when the highest bid is the Secured Creditor's credit bid. The Listing Agent shall not be entitled to any other compensation. The Listing Agent shall not split or otherwise share the Commission with any other person or entity, except that if the buyer is represented by a real estate agent, the Listing Agent and buyer's real estate agent may split or share the Commission by agreement. The Secured Creditor agrees to pay the Commission when earned and the estate shall not be responsible or obligated to pay any compensation to the Listing Agent.

- **Carve-Out Fund**: In order to provide for the payment of expenses in this Chapter 7 case and to afford general unsecured creditors an opportunity to participate in any recovery from the sale of the Property, the Secured Creditor has agreed that: (1) if the Winning Bid Amount is less than the allowed amounts owing to the Secured Creditor, then the Trustee will receive (a) 5% of the Winning Bid Amount plus the Listing Agent's Commission, or (b) 5% of the Reserve, in the event the Secured Creditor enters the winning bid (collectively, the "**Standard Carve-Out**"); provided however that the Standard Carve-Out shall never be less than $7,500.00, exclusive of the Listing Agent's Commission, nor shall it exceed $50,000.00, exclusive of the Listing Agent's Commission; (2) if the Winning Bid Amount exceeds the amounts owing to the Secured Creditor, then the portion which exceeds the amounts owing to the Secured Creditor and any valid and substantiated junior secured lienholder (the "**Surplus**") shall be retained by the Trustee and no carve-out shall be paid; however, if the Surplus is less than the Standard Carve-Out set out above by any amount ("**Short Surplus Amount**") then the Secured Creditor consents to paying the Trustee an amount equal to the Short Surplus Amount; and (3) the Trustee shall be reimbursed by the Secured Creditor for any liability insurance expenses incurred by the Trustee.

- **Back-Up Bidder**: ADC shall be authorized, but not required, to accept the second highest bid submitted during the

6

      Auction as a "back-up" bid in the event that the winning bidder fails to consummate the sale transaction.[3]

- **Sale Documents**: Promptly following the closing of the Auction, the winning bidder shall execute a sale agreement or other applicable sale documents as required by the Trustee (the "**Sale Documents**").

14. Accordingly, the Trustee submits that the sale of the Property pursuant to the above Auction process is reasonable under Bankruptcy Code § 363(b).

### B. The Sale of the Property Should Be Approved Free and Clear of All Interests

15. Pursuant to Bankruptcy Code § 363(f), the Trustee may sell property free and clear of any interest in such property in an entity other than the estate if (1) permitted under applicable non-bankruptcy law; (2) the party asserting such interest consents; (3) the interest is a lien and the purchase price at which the property is to be sold is greater than the aggregate value of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting the interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. *See In re Smart World Techs.*, LLC, 423 F.3d 166, 169 n.3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests . . . It thus allows purchasers . . . to acquire assets [from a debtor] without any accompanying liabilities."); *see also In re MMH Auto. Group, LLC*, 385 B.R. 347, 367 (Bankr. S.D. Fla. 2008).

16. The Trustee states that he shall satisfy Section 363(f)(2) of the Bankruptcy Code because the Secured Creditor consents to a sale of the Property under Section 363(f)(2) of the Bankruptcy Code, free and clear of all liens, claims, encumbrances, and interests.

---

[3] Acceptance of a "back-up" bid and proceeding to consummate a transaction with the "back-up" bidder shall be without prejudice to any claim of the Trustee against the winning bidder for failing to proceed. All rights are reserved.

17. Accordingly, under Bankruptcy Code § 363(f)(2), the Trustee seeks authority to sell the Property free and clear of all liens, claims, encumbrances, and interests.

18. The Secured Creditor agrees to pay at closing (1) all outstanding real estate taxes, including any prorated amounts due for the current tax year; (2) if applicable, the lesser of any HOA fees accrued post-petition or the equivalent to twelve months' assessments; and (3) all closing costs excluding professional fees. Any payments by the Secured Creditor as stated herein shall be subject to any and all limitations on the Secured Creditor's liability for any fees and costs under applicable law.

    **C.**    **The Sale Will Be Undertaken by the Buyer in Good Faith**

19. Bankruptcy Code § 363(m) protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under § 363(b) was later reversed or modified on appeal.

20. The sale should be found to have been in good faith if the Trustee can demonstrate the transaction occurred at arm's-length and without fraud or collusion. *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." (citation omitted)); *see also In re Lorraine Brooke Associates, Inc.*, No. 07-12641 2007 WL 2257608 (Bankr. S.D. Fla. Aug. 2, 2007) (holding that a sale was entitled to the protections of Section 363(m) of the Bankruptcy Code when it was based upon arm's length bargaining and without collusion).

21. The Trustee asserts that the sale of the Property pursuant to the Auction will utilize a competitive and transparent marketplace that facilitates an arm's-length sale without

fraud or collusion. Accordingly, the Trustee respectfully requests that the Court find that the purchaser(s) will be entitled to the protections of Section 363(m) of the Bankruptcy Code.

22. The Trustee further states that:

(a) the Trustee has reviewed the tax implications of the proposed Sale;

(b) the Trustee has determined, based upon a review of the Debtor's schedules and information derived from the 341 meeting, that there will be a meaningful distribution to allowed creditors based upon the understanding that the final sale price and the total dollar amount of claims to be filed in this case are both unknown and can only be estimated at this time; and

(c) given the information available at this time, the Trustee has made an educated evaluation and determined that the proposed Sale is in the best interest of the estate and its creditors.

**WHEREFORE**, the Trustee respectfully requests entry of an order substantially in the form of **Exhibit A**, attached hereto, and granting the Trustee such other and further relief as is just and proper.

Respectfully submitted this 29th day of May, 2018.

        ROY M. TERRY, JR., CHAPTER 7 TRUSTEE
        FOR THE BANKRUPTCY ESTATE OF
        RENEE DENISE CRENSHAW

        */s/ Roy M. Terry, Jr.*
        Roy M. Terry, Jr., VSB # 17764
        SANDS ANDERSON PC
        P.O. Box 2188
        Richmond, VA 23219-2188
        Telephone: 804.648.1636

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of May, 2018, a true copy of the foregoing Motion was electronically filed with the Court using the CM/ECF system which provides electronic notification to all parties that receive notice in this case and mailed, postage fully prepaid, to the parties on the attached service list and to the following parties[4]:

John G. Merna, Esquire
The Merna Law Group, PC
3419 Virginia Beach Boulevard, Suite 236
Virginia Beach, VA 23452
  *Debtor Counsel*

Renee Denise Crenshaw
4211 Dorset Road
Richmond, VA 23234
  *Debtor*

Mr. Cooper
d/b/a Nationstar Mortgage
8950 Cypress Waters Blvd.
Coppell, TX 75019

Mr. Cooper
d/b/a Nationstar Mortgage
c/o Mary F. Balthasar Lake, Esquire
Shapiro & Brown, LLP
501 Independence Parkway, Suite 203
Chesapeake, VA 23320
  Counsel for Mr. Cooper

Robert Van Arsdale, Esquire
Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

Auction.com, LLC
1 Mauchly
Irvine, CA 92618

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Roy M. Terry, Jr.*

ND4834-1635-2614

---

[4] In accordance with Local Bankruptcy Rule 5005-1(C)(8), when service is made on more than 25 persons or parties, the service list is not attached to copies served on each of the persons or parties, but is attached to the original Certificate of Service filed with the Court.

```
Label Matrix for local noticing            Nationstar Mortgage LLC D/B/A Mr Cooper
0422-3                                     Shapiro & Brown, LLP
Case 17-35091-KRH                          501 Independence Parkway, Suite 203
Eastern District of Virginia               Chesapeake, VA 23320-5174
Richmond
Fri May 25 15:17:35 EDT 2018

American Express                           (p)BANK OF AMERICA                          Bank of America Home Loans
PO Box 981537                              PO BOX 982238                               P.O. Box 660694
El Paso, TX 79998-1537                     EL PASO TX 79998-2238                       Dallas, TX 75266-0694


Bank of America Home Loans *               Barclays Bank Delaware                      CJW Medical Center
CT CORPORATION SYSTEM                      PO Box 8803                                 PO Box 740760
4701 COX RD STE 301                        Wilmington, DE 19899-8803                   Cincinnati, OH 45274-0760
Glen Allen, VA 23060-6802


Capital One                                Chase Card                                  Chase Mortgage
Po Box 70885                               P.O. Box 15298                              P.O. Box 24696
Charlotte, NC 28272-0885                   Wilmington, DE 19850-5298                   Columbus, OH 43224-0696


Chase Mortgage*                            Chippenham JW Med Ctrs                      City National Bank of WV
c/o Corporation Service Co.                P.O. Box 13620                              308 Goff Mountain Road
1111 E Main Street, 16th Floor             Richmond, VA 23225-8620                     Charleston, WV 25313-1415
Sparrows Point, MD 21219-0000


(p)CITY OF PHILA SCHOOL DISTRICT OF PHILA  City of Philadelphia                        Credit One Bank
MUNICIPAL SERVICES BUILDING                PO Box 41819                                PO Box 98873
1401 JOHN F KENNEDY BLVD 5TH FLOOR         Philadelphia, PA 19101-1819                 Las Vegas, NV 89193-8873
PHILADELPHIA PA 19102-1617


(p)DISCOVER FINANCIAL SERVICES LLC         Enerbank USA                                James River Emergency Group
PO BOX 3025                                1245 Brickyard Road Ste 600                 P.O. Box 14000
NEW ALBANY OH 43054-3025                   Salt Lake City, UT 84106-2562               Belfast, ME 04915-4033


Macys                                      Nationstar Mortagage                        Nationstar Mortgage*
PO Box 8218                                8950 Cypress Waters Blvd                    Bank of America Center, 16th F
Mason, OH 45040-8218                       Coppell, TX 75019-4620                      1111 East Main Street
                                                                                       Richmond, VA 23219-3531


Nationwide Credit, Inc                     Northland Group                             Ocwen Loan Servicing
P.O. Box 14581                             PO Box 390846                               1661 Worthington Rd Ste 100
Des Moines, IA 50306-3581                  Minneapolis, MN 55439-0846                  West Palm Beach, FL 33409-6493


Ocwen Loan Servicing*                      Onemain                                     Phillips & Cohen Associates
Corporation Service Company                PO Box 1010                                 PO Box 5790
1111 East Main Street                      Evansville, IN 47706-1010                   Hauppauge, NY 11788-0164
Richmond, VA 23219-3531
```

| | | |
|---|---|---|
| SYNCB/Care Credit<br>PO Box 965036<br>Orlando, FL 32896-5036 | SYNCB/Paypal Extras MC<br>PO Box 965005<br>Orlando, FL 32896-5005 | SYNCB/TJX Cos DC<br>PO Box 965005<br>Orlando, FL 32896-5005 |
| Sears/CBNA<br>PO Box 6282<br>Sioux Falls, SD 57117-6282 | Sears/CBNA<br>PO Box 6283<br>Sioux Falls, SD 57117-6283 | (p)TD BANKNORTH NA<br>70 GRAY ROAD<br>FALMOUTH ME 04105-2299 |
| WF PLL<br>P.O. Box 94435<br>Albuquerque, NM 87199-4435 | Wells Fargo Card Sevices<br>PO Box 14517<br>Des Moines, IA 50306-3517 | John G. Merna<br>The Merna Law Group, P.C.<br>3419 Virginia Beach Boulevard, #236<br>Virginia Beach, VA 23452-4419 |
| Judy A. Robbins<br>Office of the U.S. Trustee - Region 4 -R<br>701 E. Broad Street, Suite 4304<br>Richmond, VA 23219-1849 | Renee Denise Crenshaw<br>4211 Dorset Road<br>Richmond, VA 23234-3640 | |

**Exhibit A**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

In re:  RENEE DENISE CRENSHAW,                             Case No.: 17-35091-KRH
                                                          Chapter 7
**Debtor.**

### ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION TO SALE REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363

Before the Court is the Trustee's *Motion To Sale Real Property Free And Clear of Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363* [Docket No. ____ ] (the "**Sale Motion**"), by which Roy M. Terry, Jr. (the "**Trustee**"), Chapter 7 Trustee for the above-referenced debtor ("**Debtor**"), seeks authority to sell, free and clear of all liens, encumbrances, and interests, certain real property owned by Debtor, commonly known as 5012 Erringer Pl, Philadelphia, PA 19144, and more particularly described as:

> Land referred to in this commitment is described as all that certain property situated in the county of Philadelphia, and state of PA and being described in a deed dated 04/17/2000 and recorded 05/08/2000 in Instrument Number: 50076936 among the land records of the county and state set forth above, and referenced as follows:
>
> ALL THAT CERTAIN LOT OR PIECE OF GROUND, SITUATE IN THE 13TH (FORMERLY PART OF THE 22ND) WARD OF THE CITY OF PHILADELPHIA. BOUNDED AND DESCRIBED ACCORDING TO A SURVEY AND PLAN THEREOF MADE BY H. M. FULLER, ESQUIRE, SURVEYOR AND REGULATOR OF THE 9TH DISTRICT ON MARCH 14, 1924, AS FOLLOWS: BEGINNING AT A POINT ON THE SOUTHWEST SIDE OF ERRINGER PLACE 109 FEET 10-5/8 INCHES NORTHWEST OF CLAPIER STREET AND EXTENDING IN A NORTHWESTWARDLY DIRECTION 18 FEET 3-7/8 INCHES; THENCE IN A SOUTHWESTERLY DIRECTION 134 FEET 11 INCHES; THENCE IN A SOUTHEASTERLY DIRECTION 18 FEET 3-7/8 INCHES; THENCE IN A NORTHEASTERLY DIRECTION 134 FEET 4-7/8 INCHES TO THE PLACE OF BEGINNING INCLUDING ON THE REAR END THEREOF A CERTAIN 16 FEET WIDE DRIVEWAY LEADING SOUTHEASTWARD INTO THE SAID CLAPIER STREET.

Roy M. Terry, Jr., VSB # 17764
SANDS ANDERSON PC
P.O. Box 2188
Richmond, VA 23219-2188
Telephone: 804.648.1636
*Chapter 7 Trustee*

PARCEL ID: 046N21-0069.  (the "**Property**")

For the reasons set forth in the Sale Motion and on the record at the Sale Hearing, the Trustee has demonstrated that the sale of the Property on the terms contained in the Sale Motion is in the best interests of the Debtor's estate.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. The relief requested in the Sale Motion is **GRANTED** and the sale of the Property by the Trustee pursuant to 363(b), (f) and (m) free and clear of all liens, claims, encumbrances, and interests, by auction, using the services of Auction.com ("**ADC**"), is hereby **APPROVED**, subject to the terms and conditions herein.

2. Notice of the Sale Motion was proper, and no objections to the Sale Motion were timely filed.  Thus, to the extent any creditor (other than the Secured Creditor) asserts an interest or secured claim against the Property, such creditor is deemed to have consented to entry of this Order, and such creditor's claim shall not be a secured claim.  To the extent any creditor asserts a claim against the Property (i.e., junior lienholders), such creditor shall be entitled to file a proof of claim pursuant to F.R.B.P. Rule 3002(c)(3).

3. Except as provided in the Sale Documents, upon the Closing Date the Property shall be transferred to the Buyer free and clear of all encumbrances arising prior to the Closing Date or arising from or relating to acts occurring prior to the Closing Date, and any such substantiated interest, claims, liens or encumbrances, if any, shall be deemed general unsecured claims.

4. If any person or entity that has filed a financing statement or other documents or agreements evidencing interest, claims, liens or encumbrances on the Property does not timely deliver to the Trustee prior to the Closing Date—in proper form for filing and executed by the appropriate parties—termination statements, instruments of satisfaction, and/or

2

releases of all encumbrances which the person or entity has with respect to the Property, the Buyer is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property. The foregoing notwithstanding, the provisions of this Order authorizing the sale and assignment of the Property free and clear of encumbrances shall be self-executing, and notwithstanding the failure of the Buyer, the Trustee, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate and implement the provisions of this Order or the Sale Documents, respectively, all encumbrances on the Property shall be deemed divested, released and terminated.

       5.      The creation and use by Trustee of a Carve-Out Fund, as defined and described below, is hereby approved.

       6.      ADC may take any actions necessary to facilitate the sale of the property, including but not limited to: marketing the Property itself or via a Listing Agent (as that term is defined in the Sale Motion), and conducting the auction of the Property using the following procedures:

    a. **The Auction Date**: The first "Auction Date" shall not be set until entry of an order by the Bankruptcy Court approving the Motion to Sell. The first "Auction Date" shall be a date selected by ADC that is at least 21 days following the entry of an order by the Bankruptcy Court approving the retention of ADC; provided however that the Auction Date may be adjourned from time to time by posting a notice of adjournment on ADC's website.

    b. **Registration Process**: Each party wishing to participate in the Auction shall submit an on-line registration form on the website established by ADC for the Auction to qualify as a bidder. The registration form shall, among other things: (i) contain such information as reasonably requested by ADC to identify the potential bidder; and (ii) require a credit card authorization for payment of a deposit (in an amount to be determined by ADC in consultation with the Trustee), which deposit will either (a) <u>not</u> be

3

        charged, if the bidder is not the winning bidder, (b) <u>not</u> be charged, if the bidder is the winning bidder and timely consummates the sale pursuant to the Sale Documents, or (c) may <u>be</u> <u>charged</u>, if the bidder is the winning bidder but fails to timely consummate the sale, including fails to execute the Sale Documents promptly following completion of the Auction.  The Secured Creditor shall be deemed to be a qualified bidder at the Auction and shall not be required to submit a registration form or deposit.  ADC, in consultation with the Trustee, shall have the right to disqualify any potential bidder as a qualified bidder if such bidder fails to complete the registration process.

    c.    **Bid Procedure**:  Prior to the commencement of the first Auction Date, the Secured Creditor shall provide a written notice (the "<u>Secured Creditor Notice</u>") to the Trustee and ADC of the amount of its credit bid pursuant to Section 363(k) of the Bankruptcy Code.  The Secured Creditor Notice shall also include the following information: (i) a minimum purchase price for the sale of the Property acceptable to the Secured Creditor (the "<u>Reserve Price</u>"); (ii) the Secured Creditor's initial credit bid amount to serve as the opening bid for the Auction (the "**Opening Bid**"), which may be less than the Reserve Price; and (iii) the bidding increment(s) ("**Bidding Increments**") for each round of bidding after the Opening Bid.[1]  The Bidding Increments may be adjusted upwards or downwards during the Auction for each bidding round in the discretion of ADC to facilitate the most competitive bidding.  The Secured Creditor Notice shall be the sole authorization required by the Trustee and ADC to consider the submission of the Opening Bid and any competing bid(s) by the Secured Creditor pursuant to Section 363(k) of the Bankruptcy Code.[2]

    d.    **Winning Bid Amount**:  The "Winning Bid Amount" shall be the highest or otherwise best bid selected by the Trustee and ADC, consistent with the Secured Creditor Notice, during the Auction.

    e.    **Buyer's Premium**:  In addition to the Winning Bid Amount, the winning bidder shall pay a "Buyer's Premium" equal to the greater of $2,500.00 or five (5%) of the Winning Bid Amount, which shall be paid at closing directly to ADC as its commission (the "**Buyer's Premium**").  ADC shall

---

[1] If not otherwise set forth in the Secured Creditor Notice, the Reserve Price, the Opening Bid, and the initial Bidding Increments may be established by ADC in consultation with the Trustee and the Secured Creditor; <u>provided however,</u> that ADC may adjust Bidding Increments upwards or downwards during the Auction in its discretion.

[2] Without limiting the foregoing, ADC shall be authorized to increase Bidding Increments automatically during the Auction on behalf of the Secured Creditor to the extent of the authorization provided for in the Secured Creditor Notice.

4

not be entitled to any other compensation. No Buyer's Premium shall be paid when the highest bid is the Secured Creditor's credit bid. ADC shall not split or otherwise share the Buyer's Premium with any other person or entity. The estate shall not be responsible or obligated to pay any compensation to ADC.

f. **Total Purchase Price:** The actual total purchase price ("Total Purchase Price") at closing will be equal to the Winning Bid Amount plus the Buyer's Premium.

g. **Listing Agent's Commission**: The Listing Agent shall receive up to 3% of the Winning Bid Amount for any sale that closes to a third party buyer (the "Commission"). No Commission shall be paid when the highest bid is the Secured Creditor's credit bid. The Listing Agent shall not be entitled to any other compensation. The Listing Agent shall not split or otherwise share the Commission with any other person or entity, except that if the buyer is represented by a real estate agent, the Listing Agent and buyer's real estate agent may split or share the Commission by agreement. The Secured Creditor agrees to pay the Commission when earned and the estate shall not be responsible or obligated to pay any compensation to the Listing Agent.

h. **Carve-Out Fund**: In order to provide for the payment of expenses in this Chapter 7 case and to afford general unsecured creditors an opportunity to participate in any recovery from the sale of the Property, the Secured Creditor has agreed that (1) if the Winning Bid Amount is less than the allowed amounts owing to the Secured Creditor, then the Trustee will receive (a) 5% of the Winning Bid Amount plus the Listing Agent's Commission, or (b) 5% of the Reserve, in the event the Secured Creditor enters the winning bid (collectively, the "Standard Carve-Out"); provided however that the Standard Carve-Out shall never be less than $7,500.00, exclusive of the Listing Agent's Commission, nor shall it exceed $50,000.00, exclusive of the Listing Agent's Commission; (2) if the Winning Bid Amount exceeds the amounts owing to the Secured Creditor, then the portion which exceeds the amounts owing to the Secured Creditor and any valid and substantiated junior secured lienholder (the "Surplus") shall be retained by the Trustee and no carve-out shall be paid; however, if the Surplus is less than the Standard Carve-Out set out above by any amount ("Short Surplus Amount") then the Secured Creditor consents to paying the Trustee an amount equal to the Short Surplus Amount; and (3)

5

       the Trustee shall be reimbursed by the Secured Creditor for any liability insurance expenses incurred by the Trustee.

   i. **Back-Up Bidder**: ADC shall be authorized, but not required, to accept the second highest bid submitted during the Auction as a "back-up" bid in the event that the winning bidder fails to consummate the sale transaction.

   j. **Sale Documents**: Promptly following the closing of the Auction, the winning bidder shall execute a sale agreement or other applicable sale documents as required by the Trustee (the "**Sale Documents**").

7. The Trustee's acceptance of a "back-up" bid and proceeding to consummate a transaction with the "back-up" bidder shall be without prejudice to any claim of the Trustee against the winning bidder for failing to proceed.

8. If the reserve is not met by the end of the first Auction, then ADC will advertise a second Auction to commence one week later. If the reserve price is not met at the second Auction, ADC will advertise and commence a third Auction one week later. If the reserve price is not met at the third Auction, the Secured Creditor may then utilize its right to purchase the Property by credit bid.

9. To the extent applicable in any sale, the Secured Creditor agrees to pay at closing (1) all outstanding real estate taxes, including any prorated amounts due for the current tax year; (2) if applicable, the lesser of any HOA fees accrued post-petition or the equivalent to twelve months' assessments; and (3) all closing costs excluding professional fees. Any payments by the Secured Creditor as stated herein shall be subject to any and all limitations on the Secured Creditor's liability for any fees and costs under applicable law.

Date: 

                KEVIN R. HUENNEKENS
                UNITED STATES BANKRUPTCY JUDGE
                Entered on Docket:

For this I ask:

*/s/ Roy M. Terry, Jr.*
Roy M. Terry, Jr., VSB No. 17764
SANDS ANDERSON PC
PO Box 2188
Richmond, Virginia 23218-2188
Telephone: 804.648.1636
*Counsel for Roy M. Terry, Jr., Chapter 7 Trustee*

## L.B.R. 9022-1(C) CERTIFICATION

   I hereby certify that the foregoing proposed order has been endorsed by all necessary parties.

*/s/ Roy M. Terry, Jr.*

7

**COPIES TO:**

John G. Merna, Esquire
The Merna Law Group, PC
3419 Virginia Beach Boulevard, Suite 236
Virginia Beach, VA 23452
 *Debtor Counsel*

Renee Denise Crenshaw
4211 Dorset Road
Richmond, VA 23234
 *Debtor*

Mr. Cooper
d/b/a Nationstar Mortgage
8950 Cypress Waters Blvd.
Coppell, TX 75019

Mr. Cooper
d/b/a Nationstar Mortgage
c/o Mary F. Balthasar Lake, Esquire
Shapiro & Brown, LLP
501 Independence Parkway, Suite 203
Chesapeake, VA 23320
  Counsel for Mr. Cooper

Robert Van Arsdale, Esquire
Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

Auction.com, LLC
1 Mauchly
Irvine, CA 92618

8